# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION

## JACKSON, APRIL TERM, 1920.

(*Continued from Vol.* 143.)

MRS. SUSIE HALL *et al. v.* R. A. GOSSUM *et al.*

(*Jackson.* April Term, 1920.)

1. **HUSBAND AND WIFE.** Married woman's power of attorney and deed validated by curative statute.

Under Shannon's Code, sections 3764, 3765, validating deeds under powers of attorney which have been registered for twenty years or more, a married woman's power of attorney and deed executed thereunder were validated by being registered for over twenty years before the title thereby transferred was attacked. (*Post, pp.* 10-15.)

Cases cited and distinguished: Murdock v. Leath, 57 Tenn., 166; Kobbe v. Land Co., 117 Tenn., 315.

Code cited and construed: Secs. 3764, 3765 (S.).

2. **VENDOR AND PURCHASER.** Evidence held to show purchasers had actual notice.

Evidence that purchasers made inquiries as to the title of the land from lawyer who sought to have remaindermen made parties in former suit for sale of the land *held* to show actual notice of remaindermen's claim. (*Post, pp.* 15, 16.)

3. **HUSBAND AND WIFE.** Deed under power of attorney held validated by curative act.

Where plaintiffs claimed that a deed by attorney in fact under power of attorney of a married wamon, under which they claimed as remaindermen had been validated, under Shannon's Code, sections 3764, 3765, by registration for longer than twenty years, these statutes could not be said to be inapplicable because, although the deed and power of attorney were registered, there had not been twenty years of such registration period between the date of the enactment of the statutes, 1859-1860, and the date of the repudiation of the deed by the married woman in 1871, where plaintiff remaindermen at that time were minors and the repudiation was directed to and adjusted by their mother, the life tenant only, and there was no repudiation by suit to which the plaintiffs were parties. (*Post, pp.* 16, 17.)

Acts cited and construed: Acts 1859-60, secs. 3764-65; Acts 1865, ch. 10.

Code cited and construed: Sec. 4454 (S.).

4. **LIMITATION OF ACTIONS.** Presumption of validity of recorded power of attorney and deed after twenty years not affected by suspension of limitations for Civil War period.

Shannon's Code, section 4454, suspending the operation of the statute of limitations during the period of the Civil War, did not suspend the operation of sections 3761, 3762, making power of attorney and deed executed pursuant thereto presumptively valid after the power of attorney and the deed has been on record for twenty years or more; such statutes being statutes of repose and not statutes of limitations, (*Post, pp.* 17, 18.)

Code cited and construed: Sec. 4454 (S.).

5. **JUDGMENT.** Not conclusive as to persons not parties to the action.

Where grantor and life tenant named in deed, on grantor's objection to validity of deed, made a settlement wherein life tenant executed note, the decree rendered in grantor's action on note to which the

remaindermen were not parties, was not conclusive as to remain-dermen.    (*Post. p.* 18.)

6. **JUDGMENT.**  Decree not binding on persons not parties, though they sought to be made parties and their application was denied.

A decree could not be deemed binding on remaindermen not parties to the suit, on the theory that, because they sought to have them-selves made parties to the cause and their right to do so was denied by the court, the decree was *res judicata* as to them. (*Post. p.* 18.)

7. **JUDGMENT.**  Person not bound by judgment unless party to the action.

Before a person can be bound by a former judgment or decree he must have been a party to the action in which such judgment or decree was rendered.    (*Post, pp.* 18, 19.)

Cases cited and approved: Melton v. Pace, 103 Tenn., 484; Chandler v. White Oak Creek Lumber Co., 131 Tenn., 47; Pile v. Pile. 134 Tenn., 370; Bank v. Smith, 110 Tenn., 337; Taylor v. Sledge. 110 Tenn., 263; Railroad Co. v. Donovan, 104 Tenn., 465.

8. **TRUSTS.**  Property held under dry trust vested in beneficiary on. trustee's death.

Where dry trust was created, giving trustee no power and imposing on him no duty except to hold property for beneficiary, the prop-erty on trustee's death did not vest in trustee's heirs, but im-mediately vested in the beneficiary, who thereupon had the right to convey it.    (*Post, p.* 19.)

Cases cited and approved: Turley v. Massengill, 75 Tenn., 353; Ellis v Fisher, 35 Tenn., 231; Bowers v. Bowers, 51 Tenn., 293; Whittle Springs Co. v. Johnson, 2 App. Cas., 324.

9. **LIFE ESTATES.**  Limitations do not run against remaindermen until life tenant's death.

The statute of limitations did not begin to run against remainder-men until life tenant's death, the remainderman having seven years from such time in which to bring action to recover the property. (*Post, p.* 20.)

Hall v. Gossum.

Cases cited and approved: Southern Railway Co. v. Jennings, 130 Tenn., 456; Smith v. Cross, 125 Tenn., 173; Carver v. Maxwell, 110 Tenn., 75; Erch v. Church, 87 Tenn., 575; McBee v. Bearden, 75 Tenn., 731; Iron, etc., Co. v. Broyles, 95 Tenn., 612; Hubbard v. Godfrey, 100 Tenn., 150.

FROM OBION.

Appeal from the Chancery Court of Obion County.— HON. J. H. HOLMES, Chancellor.

ESSARY & DENISON, for appellants.

PIERCE & FRY and J. W. RANKIN, for appellees.

MR. JUSTICE HALL delivered the opinion of the Court.

The bill in this cause was filed by the complainants, as children and heirs at law of Mrs. Martha A. Fuller, deceased (formerly Martha A. Turner) to recover of the defendants R. A. Gossum, W. D. Giles, and W. T. Osborne a certain tract of land situated in the Sixteenth civil district of Obion county, containing approximately two hundred two acres, and to have the same sold for partition among the parties in interest. This tract of land is a portion of a 1,488-acre tract, and was formerly situated in Weakley county, but as a result of a change made in the line between Obion and Weakley counties in 1870 said tract of land became a part of Obion county.

Both complainants and defendants claim title through Susan S. Rayner, deceased. Defendants claim that cer-

tain title papers, upon which complainants rely to perfect their title, are void, and did not have the effect of vesting the title to said land in them.    Defendants claim title under a deed executed to them by Susan S. Rayner and her husband, Kenneth Rayner, on December 6, 1886.    They also rely on adverse possession, the statute of limitations, plea of *res adjudicata*, and the plea of innocent purchaser.

Upon the hearing the chancellor gave the complainants a decree for said tract of land, and ordered a reference as to rents, etc.    From this decree defendants prayed an appeal to this court, which the chancellor, in his discretion, granted, and the cause is now before the court for review.

The record presents the following facts, which are undisputed; Susan S. Rayner (a married woman) being the owner of a certain 1,488-acre tract of land, then situated in Weakley county, on September 18, 1833, jointly with her husband, executed a power of attorney to Alfred Gardner (a resident of Weakley county), authorizing him to sell said tract of land in fee simple, and vesting him with authority to make the purchaser a warranty deed to the same in fee simple.    This power of attorney was duly acknowledged by Mrs. Rayner and her husband, and was recorded in the register's office of Weakley county on March 3, 1835.

Pursuant to the authority vested in him by said power of attorney, Alfred Gardner sold and conveyed by deed said tract of land to James T. Smith, as trustee for his wife, Susan L. Smith, which deed was duly recorded in

the register's office of Weakley county on September 12, 1845. James T. Smith and his wife, Susan L. Smith, took possession of said tract of land under this deed immediately upon its execution, and lived upon it until about the year 1856, when the former died.

On September 30, 1856, Susan L. Smith conveyed to Charles C. Turner, as trustee, two hundred two acres of said 1,488-acre tract, for the use and benefit of his wife, Martha A. Turner, during her life, with the remainder to her children which she then had, and any she might thereafter have. This deed was recorded in the register's office of Weakley county on March 3, 1857. Charles C. Turner, his wife and children took possession of said two hundred two acre tract immediately upon the execution of said deed, and lived upon it until Charles C. Turner died; his death occurring about the year 1868 or 1869. Charles C. Turner and his wife had four children at the time of his death, all of whom were minors. The widow and said four children continued to live on said tract of land until the year 1871, when Mrs. Susan S. Rayner, who had executed the power of attorney to Alfred Gardner hereinbefore referred to, claimed that the power of attorney executed by her to Alfred Gardner, and the deed executed by Alfred Gardner to James T. Smith, trustee, were void, and threatened to bring suit against Mrs. Turner and her children to recover said tract of land. Thereupon Mrs. Turner, in order to quiet the title, entered into a compromise agreement with Mrs. Rayner, by which she agreed to execute to Mrs. Rayner her note for

$829.50, and agreed to accept from Mrs. Rayner a deed
to said tract of land. She did execute a note to Mrs. Ray-
ner for said amount on March 14, 1871. This note recites
on its face that it was given for the purchase money for
a tract of land of two hundred one and one-third acres
in Obion county "this day conveyed to me," and is the
same land now in controversy. This note by its terms,
became due twelve months after its date. It does not ap-
pear that Mrs. Rayner ever executed a deed to Mrs. Turner
for said tract of land in accordance with said compromise
agreement.

The note executed by Mrs. Turner was not paid at ma-
turity, and on January 20, 1874, Mrs. Rayner and her hus-
band filed a bill against Mrs. Turner in the chancery court
of Obion county, seeking a decree against her on said note,
and to have the land sold for its satisfaction. Mrs. Turner,
in the meantime, had intermarried with one L. W. Fuller,
and she and her husband had removed from the State of
Tennessee, and were residing in the State of Kentucky.
Publication for Mrs. Fuller and her husband was duly
made, and they having failed to make defense to said bill,
an order *pro confesso* was taken against them on July 30,
1874; and on the same day a decree was rendered and en-
tered in said cause in favor of Mrs. Rayner for the prin-
cipal and interest due on said note, and the same was
declared a lien on said tract of land, and, in accordance
with the prayer of the bill, said land was ordered to be
sold in bar of the equity of redemption to satisfy said de-
cree. The land was sold by the master in obedience to

said decree on December 20, 1875, and was bid off at said
sale by one I. M. Fowlkes, who, becoming doubtful as to
the validity of the title, subsequently filed a petition in
said cause, asking the court to relieve him of his bid, which
was done by and with the consent of the complainants to
the suit.

At the July term of the court, 1876, the order of sale
was renewed, and the master on December 27, 1876, again
offered said land for sale to the highest and best bidder
in obedience to the decree of the court, when Mrs. Rayner
and her husband became the purchasers at the price of
$1,250.

On December 28, 1876, and before the sale to Mrs. Ray-
ner and her husband was confirmed, Mrs. Fuller and her
husband filed their petition in said cause, seeking to have
the order *pro confesso* theretofore taken against them set
aside, and asked to be permitted to file an answer and
make defense to the bill.   In this same petition L. W. Ful-
ler, as the father and next friend of the children of his
wife, both by her former marriage and the marriage then
subsisting, all of said children then being minors under
the age of twenty-one years, asked that said children be
made parties defendants to the bill filed in said cause; the
petition alleging that said children owned the remainder
interest in said land under the deed from Susan L. Smith
to Charles C. Turner, trustee.

The prayer of said petition was granted by the chan-
cellor, in so far as relief affecting Mrs. Fuller and her hus-
band was concerned, and all former orders made in said

cause were ordered set aside, and Mrs. Fuller and her husband were permitted to answer the bill and make defense thereto; but the petition, in so far as it sought to have the children. of Mrs. Fuller made parties defendants to the bill, was denied.

The cause was thereafter heard on July 25, 1877, by the chancellor on the bill and answer of Mrs. Fuller and her husband and upon proof, when a decree was rendered by the chancellor on said note, and said decree was declared a lien on the tract of land, and the same was again ordered sold on a credit of six months, and in bar of the equity of redemption, for its satisfaction.

From this decree Mrs. Fuller and her husband appealed to the supreme court sitting at Jackson, and the cause was heard by that court at its April term 1881, and the decree of the chancellor was affirmed, and the cause was remanded to the court below for the execution of the decree. The land was finally sold under said decree by the master on November 21, 1881, when Mrs. Susan S. Rayner became the purchaser thereof. This sale to Mrs. Rayner was confirmed, and a writ of possession was awarded and duly issued to put her in possession of said land. The writ of possession was duly executed by the sheriff of Obion county on February 24, 1882.

On December 6, 1886, Mrs. Rayner, believing that she owned the land in fee simple by virtue of the decree rendered in the cause of *Susan S. Rayner et al.* v. *Martha A. Turner et al.*, conveyed (jointly with her husband) said land to the defendants, R. A. Gossum and W. D. Giles, in

fee simple. The deed to Gossum and Giles was recorded in the register's office of Obion county on December 31, 1886. A portion of said land has since been sold, and is now owned by the defendant W. T. Osborne. Gossum and Giles, and their successor to the portion sold, have been in continuous, open, and adverse possession of said land since its purchase by Gossum and Giles in 1886.

Mrs. Martha A. Fuller (formerly Mrs. Turner), who was the life tenant in said land under the deed executed by Susan L. Smith to Charles C. Turner, trustee, died on October 5, 1915, a resident of Henderson county, Tenn., leaving the complainants, Mrs. Susie Hall, Charles C. Turner, Mrs. Mary Douglass, and R. W. Fuller, and the defendants Addie Sanders, J. L. Fuller, J. E. Fuller, Mrs. Cora Leatherwood, Mrs. May McPhearson, and Edward M. Sanders, as her only children and heirs at law, and who claim said land as remaindermen under the Susan L. Smith deed above referred to, and they insist that their title to said land is superior to that of the defendants. The present bill was filed by complainants on May 24, 1919.

It is insisted by the defendants that, Mrs. Susan S. Rayner being a married woman at the time she and her husband executed to Alfred Gardner the power of attorney vesting in him the authority to sell said land, said power of attorney was void, and that therefore the deed executed by Alfred Gardner to James T. Smith, as trustee for his wife, Susan L. Smith, upon the authority attempted to be vested in him by said power of attorney, was also void,

Hall v. Gossum.

and did not communicate any title to either James T. Smith, as trustee, or his wife, Susan L. Smith. This being true, it is insisted that the deed of Susan L. Smith did not vest the title to said land in Charles C. Turner, as trustee, for the use and benefit of his wife, Mrs. Martha A. Turner, during her life, and at her death to her children. It is insisted, therefore, that Mrs. Turner did not become vested with a life estate in said land and the remainder in her children, and for this reason complainants are not entitled to recover in this action.

The validity of the power of attorney from Susan S. Rayner and her husband, Kenneth Rayner, to Alfred Gardner, and the deed from Alfred Gardner to James T. Smith, trustee, depends upon the effect of sections 3764 and 3765 of Shannon's Code. These sections are as follows:

Sec. 3764. "In all cases where a deed or deeds conveying real estate have been executed by any person or persons purporting to act as attorney or attorneys in fact, which deed or deeds have been registered, whether with or without proper probate or acknowledgment, twenty years or more in the register's office of the county where the real estate is situated, or, if the land lay within the Indian Territory at the time of said conveyance, then if registered in the register's office of any county in the State, it shall be presumed, until the contrary is shown, that said conveyance was properly made by the attorney or attorneys in fact, and such deed or deeds, or copies from the register's books, shall be deemed valid to pass the legal title to real estate in the same manner as if the same had been exe-

cuted by the principal or principals: Provided, that nothing herein contained shall affect the rights of creditors or purchasers for valuable consideration without notice."

Sec. 3765. "When a power or powers of attorney authorizing the sale or conveyance of real estate have been registered, whether with or without proper probate or acknowledgment, or any probate or acknowledgment at all, twenty years or more in the register's office of the county where the real estate is situated, or, if the land lay within the Indian Territory, then if registered in the register's office of any county in the State, such power or powers of attorney shall be deemed good and valid in law to pass the estate conveyed by the attorney or attorneys in fact: Provided, that nothing herein contained shall affect the rights of creditors or purchasers for valuable consideration, without notice."

These sections of the Code were construed by this court in the cases of *Murdock* v. *Leath,* 10 Heisk., 166, and *Kobbe* v. *Land Co.,* 117 Tenn., 315, 98 S. W., 175.

It was held in *Murdock* v. *Leath, supra,* that, when a power of attorney has been registered for twenty years or more, it shall be deemed good and valid in law to pass the estate conveyed; that the presumption that it was properly registered is not disputable either by persons *sui juris* or those under disability; but whether the principal who gave the power of attorney had the power which he authorized the attorney to convey, or whether the power was still subsisting when the deed was made by the attorney, were questions that could be inquired into, and were the only questions not settled by the statute.

In construing the first section above quoted, which relates to deeds made by an attorney in fact, the court said:

"The first provision simplified is that when a deed, purporting to be made by an attorney in fact, has been registered for twenty years or more, 'it shall be presumed, until the contrary is shown, that the deed was properly made by the attorney, and such deed, or a copy from the register's book, shall be deemed valid to pass the title in the same manner as if it had been executed by the principal.' The presumption that the deed was properly made by the attorney is not conclusive, but disputable. The fact that the attorney had a power of attorney to make it cannot be disputed—that is settled by the other provision (section 3765) already considered; but whether the deed was made properly, so as to pass a valid title, is subject to be disputed. If this is not done successfully, then the deed is as effectual in passing the title as if it had been made by the principal. But if it should be shown that the principal had no title to the estate, or that the attorney had executed the deed after his power had been revoked or had expired, the presumption would thereby be overturned, and it would be shown that the deed was not properly made by the attorney. The presumption, however, stands, that the deed was properly made, until rebutted, and if not so rebutted, it operates as a subsisting presumption as well against those under disability as those not."

These sections of the Code were again construed in the case of *Kobbe* v. *Land Co., supra.* And the court, after citing and quoting with approval the construction placed

upon these sections of the Code in the case of *Murdock* v. *Leath, supra,* said:

"No exception is made in the act in favor of married women, and the court can make none. We are of opinion, therefore, that, with the exception noted in the excerpt from *Murdock* v. *Leath,* it was the purpose of the legislature to make all deeds executed by power of attorney conclusive of the title after twenty years' registration in the county in which the land lay. This construction we regard as not only in harmony with the language used, and with the construction placed upon the previous act (sections 3761, 3762), but the only one which will fully carry out the beneficent purpose had in view by the General Assembly when the legislation was enacted."

Both the power of attorney and the deed executed by Alfred Gardner pursuant thereto were registered in the county where the land lay, and had been registered for a period of more than twenty years next before the date on which Susan S. Rayner undertook to convey the land to the defendants Gossum and Giles. Both the power of attorney and the deed from Gardner (the attorney in fact) had been registered in the county where the land lay for more than twenty years before the compromise agreement was entered into between Mrs. Rayner and Mrs. Turner (the life tenant) in 1871; and more than twenty years before Mrs. Rayner and her husband filed their bill to enforce the collection of the note executed by Mrs. Turner as a result of said compromise agreement, by having the land sold for its satisfaction, in 1874. Therefore there can be no doubt that, under the construction placed by this

court on the sections of the Code hereinbefore referred to and quoted, the deed from Alfred Gardner (the attorney in fact) to James T. Smith, trustee, is valid, and cannot now be challenged by the defendants. The contention is not made that Mrs. Rayner was not vested with the title to said land at the time she executed the power of attorney to Alfred Gardner in 1833, nor is it contended that the power of attorney had expired or been revoked by Mrs. Rayner at the time of the sale by the attorney in fact in 1845.

Gossum and Giles had constructive notice of the power of attorney to Alfred Gardner; the deed from Alfred Gardner to James T. Smith, trustee, and the deed from Mrs. Susan L. Smith to Charles C. Turner, trustee, at the time of their purchase of said land in 1886. All of said instruments had been of record in the county where the land was situated for more than twenty years next preceding the date of their purchase. The evidence shows that Gossum and Giles also had actual notice of the claim of complainants and the other children of Mrs. Turner in said land at the time of their purchase.

The defendant Gossum testified that he and Giles discussed the matter with Mr. D. D. Bell, the attorney who represented Mr. and Mrs. Fuller (formerly Mrs. Turner) in the suit filed by Mrs. Rayner in the chancery court of Obion county in 1874, and who also filed the petition for Mr. and Mrs. Fuller, in which Mr. Fuller sought to have the children of Mrs. Fuller, both by her former marriage and the marriage then subsisting between her and Fuller,

made parties defendants to that suit, and Mr. Gossum says that Mr. Bell gave it as his opinion that the title to said land was good. The defendants, therefore, cannot avail themselves of the defense that they were innocent purchasers.

It is insisted by defendants that the Act of 1859-1860 (sections 3764-3765) is not applicable in the suit at bar, for the reason that twenty years' registration of the deed from Alfred Gardner to James T. Smith, trustee, had not elapsed between the date of its passage and the date of the alleged repudiation by Mrs. Rayner of said deed in 1871 and the bringing of her suit in 1874. It is further insisted that the statute of 1859-1860 was suspended by chapter 10 of the Acts of 1865 (section 4454 of Shannon's Code), and for this reason the necessary twenty years had not elapsed between the date of the registration of said deed and the date of Mrs. Rayner's alleged repudiation thereof in 1871.

It cannot be held that the alleged repudiation of said deed by Mrs. Rayner in 1871, nor the agreement entered into between her and Mrs. Fuller (then Mrs. Turner), nor the bringing of the suit by Mrs. Rayner in 1874, to enforce the collection of the note executed by Mrs. Fuller as a result of said compromise agreement, affected the rights of complainants and the other children of Mrs. Fuller under the Susan L. Smith deed, because they were not parties to said agreement, nor were they parties to the suit filed by Mrs. Rayner against Mrs. Fuller. Mrs. Fuller could not, by any agreement which she may have entered into with

Mrs. Rayner, surrender the vested interests of her children in the land conveyed by the Susan L. Smith deed. Nor did Mrs. Rayner acquire the interests of said children in said land by her purchase of the same at the chancery court sale. The suit was not brought by Mrs. Rayner to recover the land, but was brought to enforce the collection of the note executed to her by Mrs. Fuller. Mrs. Fuller never had more than a life estate in the land, and this is all Mrs. Rayner acquired by her purchase at the chancery court sale, and, as before stated, was all that she could possibly convey to the defendants by her deed executed to them in 1886.

Mrs. Rayner never brought any suit at any time to have the deed executed by Alfred Gardner (the attorney in fact) declared void upon the ground that she was a married woman at the time she executed the power to Gardner, and was not therefore legally capable of executing the power. But said deed remained of record in the register's office of Weakley county from September 12, 1845, till February 24, 1882, the date upon which Mrs. Rayner was put in possession of said land under the decree of sale rendered in the cause of Mrs. Rayner and others against Mrs. Fuller and others (a period of more than thirty-six years), without any step being taken by Mrs. Rayner to have it declared void as to said children and set aside for lack of power to authorize Alfred Gardner (the attorney in fact) to execute it.

Furthermore, the statute of 1859-1860 is not a statute of limitation, but is a statute of repose, having for its

purpose the quieting of titles based upon deeds made by attorneys in fact other than those specially excepted from its operation. We think, therefore, that section 4454 of Shannon's Code has no application to said statute. It applies alone to statutes of limitation.

It is next insisted by defendants that the decrees of the chancery court in the cause of Mrs. Rayner against Mrs. Fuller and her husband are *res adjudicata* as to the complainants and the other children of Mrs. Fuller, because they sought to have themselves made parties to that cause, and their right to do so was denied by the court..

We do not think that such is the effect of the decrees rendered in that cause. It is a well-established rule that before a person can be bound by a former judgment or decree he must have been a party to the action in which such judgment or decree was rendered. *Melton* v. *Pace*, 103 Tenn., 484, 53 S. W., 939; *Chandler* v. *White Oak Creek Lumber Co.*, 131 Tenn., 47, 173 S. W., 449; *Pile* v. *Pile*, 134 Tenn., 370, 183 S. W., 1004; *Bank* v. *Smith*, 110 Tenn., 337, 75 S. W., 1065; *Taylor* v. *Sledge*, 110 Tenn., 263, 75 S. W., 1074; *Railroad Co.* v. *Donovan*, 104 Tenn., 465, 58 S. W., 309.

The children of Mrs. Fuller never became parties to the suit between Mrs. Rayner and their mother, and the court was without jurisdiction to render any decree in that cause that could affect their interest in said land. The decree rendered in that cause, in so far as it undertook to vest the remainder interest in the tract of land in Mrs. Rayner (the purchaser at the sale), was *coram non judice*

and void.   The only effect of the decree in that cause was to divest Mrs. Fuller of her life estate in said land and vest it in Mrs. Rayner.   This is all that Mrs. Rayner obtained by her purchase at said sale, and was all she could convey to the defendants.   The court could not, by any sort of decree in that cause, divest Mrs. Fuller's children of the remainder interest vested in them by the deed of Susan L. Smith and vest it in Mrs. Rayner, because, as before stated, said children were not parties to the suit, nor were said children bound by the compromise agreement entered into by Mrs. Fuller with Mrs. Rayner.

It is insisted that the deed from Susan L. Smith to Charles C. Turner, trustee, was ineffective to vest the title to said land in Mrs. Fuller for life with the remainder to her children, because, at the time said deed was made, the legal title to said land was in the heirs of James T. Smith, trustee, who had died, and not in Susan L. Smith.

We do not think this contention is well grounded.  The deed to James T. Smith, trustee, shows that the trust created was a dry one.   It gave him no power, and imposed upon him no duty except to hold said property for his wife, and upon his death the property immediately vested in the beneficiary, Susan L. Smith, and she had the right to convey it.   *Turley* v. *Massengill,* 7 Lea, 353; *Ellis* v. *Fisher,* 3 Sneed, 231, 65 Am. Dec., 52; *Bowers* v. *Bowers,* 4 Heisk., 293; *Whittle Springs Co.* v. *Johnson,* 2 App. Cas., 324.

It is insisted by the defendants that they have acquired title to said land by adverse possession and the statute of limitations.

The defendants cannot avail themselves of this defense, because the statute of limitations did not begin to run against the remaindermen until the death of Mrs. Fuller, the life tenant. The possession of the defendants could not become adverse to the rights of the remaindermen until the falling in of the life estate, which occurred upon the death of Mrs. Fuller in 1915. *Southern Railway Co.* v. *Jennings,* 130 Tenn., 456, 171 S. W., 82; *Smith* v. *Cross,* 125 Tenn., 173, 140 S. W., 1060; *Carver* v. *Maxwell,* 110 Tenn., 75, 83, 71 S. W., 752.

The complainants had seven years from the date the statute began to run in which to bring their suit for the recovery of the land. *Southern Railway Co.* v. *Jennings, supra; Erch* v. *Church,* 87 Tenn., 575, 11 S. W., 794, 4 L. R. A., 641; *McBee* v. *Bearden,* 7 Lea, 731; *Iron, etc., Co.* v. *Broyles,* 95 Tenn., 612, 32 S. W., 761; *Hubbard* v. *Godfrey,* 100 Tenn., 150, 47 S. W., 81.

We find no error in the decree of the chancellor, and it is affirmed, and the cause is remanded to the court below for further proceedings.

The defendants will be taxed with the costs of the appeal to this court.