## BASKIN v. MONTEDONICO.
### No. 4502.

District Court, W. D. Tennessee, W. D.

Chandler, Shepherd, Owen & Heiskell, of Memphis, Tenn., and Arthur Jordan, of Clearwater, Fla., for plaintiff.

King, Taylor & King, of Memphis, Tenn., for defendant.

MARTIN, District Judge.

This action at law was filed in this court on May 14, 1938, by J. D. Baskin, of Florida, as successor trustee, against Louis A. Montedonico, Sr., of Tennessee, to recover on a judgment for $13,000.00 rendered August 18, 1936, by the Circuit Court of the Sixth Judicial Circuit of the State of Florida, for Pinellas County, in Chancery Cause No. 16878, in favor of Jack F. White, substitute trustee of the estate of James A. Winkleman, deceased, against Louis A. Montedonico, Sr., who was designated trustee of said estate in the will of the decedent.

The transcript of the proceedings in the Florida Court is certified according to the Acts of Congress and shows that plaintiff, J. D. Baskin, was, in the aforesaid Chancery Cause No. 16878, appointed by court order of November 30, 1937, successor trustee in the place of Jack F. White, and duly qualified as such by making the required bond and taking the prescribed oath.

The record shows, however, that in the order entered by the Florida Court June 25, 1936, removing the defendant Louis A. Montedonico, Sr., as trustee, and appointing Jack F. White as successor, the direction was given that "said successor trustee shall file a bond in the penal sum of $5,000.00, said bond to be approved by this court and to be conditioned upon the faithful performance of the duties of successor trustee and a faithful accounting for all monies 'and assets coming into his hands." Notwithstanding this express direction, Jack F. White gave no bond, and his resignation in writing filed January 31, 1936, avers that "there has come into my hands no funds or other property and I have incurred no liabilities as such receiver and have done no act under such appointment."

And on the same date, the court in its order appointing J. D. Baskin, successor trustee to Jack F. White, says: "The court finds that the recitals contained in his (Jack F. White's) resignation are true and correct." Jack F. White never qualified and never assumed to act as trustee.

In the original bill filed in the Florida cause, No. 16878 Chancery, the sheriff's return shows service on the defendant, Louis A. Montedonico, Sr., as Executor and as Trustee of the Estate of James A. Winkleman, and likewise the appearance of the defendant is expressly made in such capacities.

In the amended bill, filed September 27, 1935, as well as in the original bill, the plaintiff, Theodocia B. Winkleman, sues Louis A. Montedonico, Sr., and herself as Executors of the Estate of James A. Winkleman, deceased, and Louis A. Montedonico, Sr., as Trustee of said estate. Among other things, she prays the removal of Montedonico as Trustee and for an accounting by him, both as Executor and as Trustee. The amended bill prays further that "defendants may be required by proper order of this court to pay such amounts as may be found to be due to this plaintiff".

After setting aside, on November 20, 1935, an order of November 7, 1935, removing Montedonico as Trustee and appointing the First National Bank of Memphis successor trustee, the court later entered the aforesaid order of June 25, 1936, removing Montedonico and appointing Jack F. White as Trustee.

In response to a court order requiring him to account for his acts as Trustee, Montedonico, on August 5th, 1936, filed his report, in which he stated that he had in his hands no funds and had received none as Trustee of any property located in Florida. He reported, further, that he held "as trustee, title to certain real estate located within the State of Tennessee, and has on hand as income derived therefrom certain funds which said property and funds are entirely out of the jurisdiction of this (Florida) Court and is within the jurisdiction of the Chancery and Probate Courts of Shelby County, Tennessee, which said courts have been and are now administering said trust, and therefore, that he, as such Trustee has no property or funds of any character or kind subject to the jurisdiction of this court for which he should account."

On August 17, 1936, an order signed August 13th by another Circuit Judge was filed directing Montedonico to show cause why he should not be adjudged in contempt, and a personal judgment for $17,-500.00 entered against him "for failing and refusing to file in this court an accounting" in accordance with the previous court order, in response to which Montedonico had filed his report disclaiming any funds in his hands subject to the jurisdiction of the Florida Court. This show-cause order directed: "Let a copy of this

order and a copy of the petition be served forthwith upon any of the attorneys of record for Louis A. Montedonico, Sr." No personal service of this show-cause order was had on Montedonico; but he appeared by counsel on written motion to dismiss and quash the aforesaid rule nisi, which was overruled; and, on August 18, 1936, judgment was entered by the Florida Court that "Jack F. White, Substitute Trustee, do have and recover of and from said Louis A. Montedonico, the sum of $13,000.00 for which let execution issue."

The controversy out of which the Florida litigation arose resulted from the appointment by James A. Winkleman, in his will executed June 23, 1933, of his friend, Louis A. Montedonico, Sr., as coexecutor and sole trustee. The testator bequeathed and devised all of his estate, both personal and real, to the trustee for the life of the testator's widow for her sole use and benefit, with broad powers vested in the trustee to sell all or any part of the corpus if at any time and for any reason the income from the trust estate should not be sufficient for the proper care of the testator's wife and to provide her with the necessities and comforts of life. The will provided that the trustee "shall collect and receive all of the income, dividends, rights, benefits, uses and rents arising from said trust estate in this item mentioned, and shall first pay out of same all of the proper costs, charges and expenses incurred on account of the administration of the said trust, and shall pay all the balance of the income to my said wife during her lifetime in such sums and at such times as she may request."

The most valuable property left by the testator, James A. Winkleman, was a piece of improved city real estate in his former home city, Memphis, Tennessee, known as 1042 Union Avenue, or the Union Chevrolet Building.

At the time of his death, Winkleman, with his wife, resided in Florida and was legally domiciled in the State of Florida. His will was probated originally in the Probate Court of Pinellas County, Florida, and on May 25, 1934, defendant Montedonico qualified there as coexecutor with Mrs. Winkleman.

On June 26, 1934, the defendant Montedonico qualified as Executor and Trustee of the Winkleman Estate, under ancillary letters in the Probate Court of Shelby County, Tennessee, where he has been and is now administering the estate under the orders of that Tennessee Court. All disbursements of the defendant as Executor and Trustee of the Winkleman Estate have been made in conformity with orders of the Tennessee Probate Court. By petition, he obtained in October 1934 court authority to pay taxes on the Memphis real estate and other debts arising from real estate out of real-estate rental collections. His inventory, filed on November 19, 1934, showed real estate but no personalty.

As Executor and Trustee, Montedonico filed a bill in the Chancery Court of Shelby County, Tennessee, for the collection of rents due him as executor and trustee from the Union Chevrolet Company, and for authority for the execution of a new lease of the Memphis Chevrolet building to the Union Chevrolet Company, and for authority to refinance a mortgage on the property. The relief prayed was granted. Publication was had for Mrs. Winkleman in that cause, wherein she appeared and surrendered certain rent notes pertaining to the real property involved. She was advised by Mr. Montedonico of these proceedings, and also of the proceedings in the Probate Court of Shelby County.

On January 30, 1935, Mrs. Theodocia B. Winkleman, widow of James A. Winkleman, filed her bill against Louis A. Montedonico, Sr., in the Circuit Court of Pinellas County, Florida, alleging violations of trust and failure to obey provisions of will as to her support, and praying for a receiver of the trust property and for the removal of Montedonico as Trustee and for a report by him as Executor and Trustee. The bill was twice amended.

L. A. Montedonico, Sr., was never sued personally or individually, never entered personal or individual appearance, and was never served personally in said cause of Theodocia B. Winkleman vs. Louis A. Montedonico, Sr., and Theodocia B. Winkleman, as executors of the estate of James A. Winkleman, and Louis A. Montedonico, Sr., as trustee of said estate, being case No. 16878 Chancery, in the Circuit Court of Pinellas County, Florida.

Bussey, Mann & Barton, attorneys, appeared for Montedonico in said cause in his representative capacity as executor and trustee under the will of Winkleman, and represented themselves as appearing for him in no other capacity.

The judgment of the Circuit Court of Pinellas County, Florida, sued on in this

cause, pursuant to the full faith and credit clause of the Constitution, was rendered against Louis A. Montedonico, Sr., personally for a sum represented in the Florida Court before and at the time of the entry of the judgment as having come into his hands from property in Tennessee.

Moreover, at the time of the entry of said judgment, the defendant here, Louis A. Montedonico, Sr., as trustee under the will of James A. Winkleman, deceased, had made a report to the Circuit Court of Pinellas County, Florida, in which he revealed that he was administering the real estate in Tennessee under the orders of the Probate Court and of the Chancery Court of Tennessee, and that he had in his hands no property or funds as executor or trustee under the will of James A. Winkleman subject to the jurisdiction of the Florida Court.

The judgment against Montedonico, personally, was entered for rents from real estate in Tennessee which he was administering under the orders of the Probate and Chancery Courts of Shelby County, Tennessee. The judgment was entered without evidence of any amount being in the hands of Montedonico as Executor or Trustee from the real estate or other property in Memphis, Tennessee, which had not been paid out pursuant to orders of the Tennessee courts.

Before Mrs. Theodocia B. Winkleman filed her suit in the Florida Court to remove Montedonico as Trustee and for the other purposes, the Probate Court of Shelby County, Tennessee, had assumed and exercised jurisdiction of the application of Louis A. Montedonico, Sr., as co-executor and sole trustee of the property in Shelby County, Tennessee.

The Constitution of the United States, U.S.C.A., provides in the first sentence of Article 4, Section 1: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State".

The judgment of the Florida Court sued on in this case, having been duly certified according to Acts of Congress pursuant to the power granted in the second sentence of Article 4, Section 1, of the Constitution, the double-barreled question for decision here is, did the Circuit Court of Pinellas County, Florida, have jurisdiction over the person of the defendant Louis A. Montedonico, Sr., and over the subject matter as to which it rendered its judgment? Brown v. Fletcher, 210 U.S. 82, 28 S.Ct. 702, 52 L.Ed. 966.

The answer to this question involves the consideration of several propositions of law.

## I.

The defendant contends that no judgment in favor of Jack F. White, as substitute trustee, could be lawfully rendered by the Florida Court against him, because White never qualified as trustee by making bond and taking oath as prescribed by the court order appointing him, and never assumed to act as trustee.

Even so, the conclusion is that such failure to qualify would only furnish ground for his removal as trustee and would not invalidate his appointment or vitiate judgment in his favor rendered by a court of competent jurisdiction. Williams, Trustee, v. Gideon, 7 Heisk., Tenn. 617; compare, also, these Tennessee decisions: Whitworth & Moore v. Patterson, 6 Lea 119; Butler v. Hill, 1 Baxt. 375; Edmondson v. Harris, 2 Tenn.Ch. 427, see, also: Mills v. Haines, 3 Head 332; Vance v. Smith, 2 Heisk. 343; consider: Glenn, Substitute Trustee, v. Soule, C.C., 22 F. 417; 65 Corpus Juris, page 610, Sec. 425.

## II.

Defendant asserts that the Florida Court had no jurisdiction over the subject matter, because the administration of a trust of land is governed by the law of the state where the land is situated and can be supervised properly by the courts of that state only. The contention is made that the Florida Court, having jurisdiction merely over the person of Montedonico as executor and trustee, could not supersede the Tennessee Courts in the administration of trust property in Tennessee.

On the record in this case, the conclusion is that the position of the defendant is unsound. Pennoyer v. Neff, 95 U.S. 714, 729, 24 L.Ed. 565, and Cooper v. Newell, 173 U.S. 555, 19 S.Ct. 506, 43 L. Ed. 808, cited by defendant's counsel, are not deemed applicable.

In the case of a trust, the jurisdiction of a court of chancery is sustainable wherever the person is found, although land not within the jurisdiction of the forum may be affected by the decree. Massie v. Watts, 6 Cranch 148, 3 L.Ed. 181. Cf: Smith v. Davis, 90 Cal. 25, 27 P. 26, 25 Am.St.Rep. 92.

■ In Memphis Savings Bank v. Houchens, 8 Cir., 115 F. 96, 108, it was said: "When a court of equity acquires full jurisdiction of the trustee in whom the legal title to trust property is vested, and other necessary parties are before the court, either in obedience to process or by their voluntary appearance, it can compel the trustee to dispose of the legal title and distribute the proceeds thereof as it may direct, although a part of the trust property may be located outside of the territorial limits of its jurisdiction. Such orders, and decrees and conveyances made in pursuance thereof, when they emanate from a court possessing full chancery powers, which has acquired jurisdiction of the trustee and other necessary parties, are respected everywhere as binding upon the parties to the litigation and their privies, although some of the property thereby affected may not be within the territorial jurisdiction of the court. If such were not the rule applicable to such cases, many trusts could not be successfully, or, at least, economically administered. Massie v. Watts, 6 Cranch 148, 3 L.Ed. 181; Muller v. Dows, 94 U.S. 444, 24 L.Ed. 207; McElrath v. Railroad Co., 55 Pa. 189; Le-Breton v. Superior Court, 66 Cal. 27, 29, 4 P. 777; Bisp.Eq. § 47, and other cases there cited."

In Miller v. Birdsong, 7 Baxt., Tenn. 531, 537, the Supreme Court of Tennessee said: "Rights growing out of trust or contract, or founded on a fraudulent violation of the principles of equity, as between man and man, are purely personal, and will consequently be upheld and enforced both by law and equity, whenever jurisdiction has been acquired over the parties, without regard to the nature or situation of the property in which the controversy has its origin, and even when the relief sought consists in a decree for the conveyance of land which lies beyond the reach of the authority of the court, and can only be reached through the exercise of the powers over the person."

Insofar as Beardsley v. Hall, 291 Mass. 411, 197 N.E. 35, 99 A.L.R. 1129, cited by defendant's counsel, conflicts with the foregoing authorities, its doctrine is disapproved.

### III.

■ The argument that the defendant could not lawfully transfer funds from Tennessee to Florida without an express order of the Probate Court of Shelby County, Tennessee, does not gainsay his duty to have applied for and obtained such authority, if so directed by the court of original jurisdiction of the administration of the trust estate, that is to say, the Florida Court. No showing has been made that Montedonico applied to the Tennessee court for such authority. On the contrary, it is evident that throughout the proceedings, he resisted vigorously the idea of transfer. Wherefore, his argument availeth naught.

### IV.

Finally, the defendant urges that (1) being sued in Florida only in his representative capacity as executor and trustee he was not liable to personal judgment; (2) especially since there was no service upon him personally of the rule nisi or the citation for contempt pursuant to which the personal judgment sued on here was rendered by the Florida Court; and (3) because the courts of the forum (Tennessee) hold that one sued in his representative capacity is bound in that capacity only.

■ A judgment without jurisdiction of a party, as well as of the subject matter, is void under the Tennessee authorities. Thompson v. Keck Manufacturing Co., 107 Tenn. 451, 64 S.W. 709; McLean v. Chanabery, 5 Tenn.App. 276. See to same effect: Brown v. Fletcher, 210 U.S. 82, 28 S.Ct. 702, 52 L.Ed. 966.

In Thompson v. Whitman, 85 U.S. 457, 18 Wall. 457, 21 L.Ed. 897, the Supreme Court of the United States held that the record of a judgment rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction; and if it be shown that such facts did not exist, the record will be a nullity even though it may recite that they did exist. See, also, Knowles v. Logansport Gaslight & Coke Co., 19 Wall. 58, 61, 22 L.Ed. 70; Cooper v. Newell, 173 U.S. 555, 566, 19 S.Ct. 506, 43 L.Ed. 808; Reynolds v. Stockton, 140 U.S. 254, 265, 11 S.Ct. 773, 35 L.Ed. 464; Thormann v. Frame, 176 U.S. 350, 20 S.Ct. 446, 44 L.Ed. 500; Simmons v. Saul, 138 U.S. 439, 448, 11 S.Ct. 369, 34 L.Ed. 1054; Pennoyer v. Neff, 95 U.S. 714, 730, 24 L.Ed. 565.

If the law of the forum is to be disregarded and the law of Florida is to be applied, the defense that want of personal service on Montedonico in his individual capacity invalidates the judgment against him falls.

On the Florida law, Sessions v. Willard, 1937, 126 Fla. 848, 172 So. 242, 245, rules directly against defendant's contention. There, the Supreme Court of Florida' upheld judgment against a defendant personally, saying: "It is first contended that the bill of complaint is fatally defective because it is brought against Willard as administrator and does not make him a defendant individually, and that consequently no decree could be rendered against him other than as administrator. This contention is without merit. * * * The suit is not at common law, but is in equity, the bill prays that T. E. Willard be required to account for the assets of the estate in his hands as administrator and that the court decree payment by the defendant to plaintiffs and such other persons of like interests as may join in this suit. * * * The bill correctly described the status of the parties and recites facts which give complainants a right of action against defendants personally or as administrators."

The Florida Court has held further that if a defendant is sued as executor or administrator, the affirmative pleading may be amended to charge him personally and vice versa. State ex rel. v. Southerland, 1932, 106 Fla. 103, 142 So. 883. See also, Epstein v. Bank, 92 Fla. 796, 110 So. 354, 356.

■ But the Tennessee law and 'not the Florida law governs upon the jurisdictional question in controversy. Tennessee is the forum. It is only when the jurisdiction of the court in another state is not impeached, either as to the subject matter or the person, that the record of the judgment is entitled to full faith and credit. Thompson v. Whitman, 85 U.S. 457, 463, 465, 18 Wall. 457, 21 L.Ed. 897; Brown v. Fletcher, 210 U.S. 82, 88, 28 S.Ct. 702, 52 L.Ed. 966; and other United States Supreme Court decisions cited above.

Melton v. Pace, 103 Tenn. 484, 53 S. W. 939, holds that in order that a judgment may be effective as res adjudicata, it is essential that the party sought to be concluded thereby should have sued or been sued in both cases, in the same capacity or character, and to enforce the same right. The court quoted page 488, 53 S.W. page 940, with approval from Phillips on Evidence, Vol. 2, p. 11, as follows: "Though the individual be the same in the two suits, yet, if he stood in a different relation or character on the two occasions, he·will not be affected by a judgment or verdict in the first suit."

In Chandler v. Lumber Co., 131 Tenn. 47, 173 S.W. 449, the court held that the judgment rendered in a former suit against one individually and not as trustee, and also against all beneficiaries of the trust of which he was trustee, is conclusive against the trustee in his representative capacity. The court said, page 49, 50, 173 S.W. page 449: "It is a familiar rule that a person sought to be bound by a former judgment should have been a party to that action, and likewise that he must have appeared in the former action in the same capacity or character in which he appears in the latter suit. This is said to be the fundamental rule, and to be found in the Roman law and all other systems of jurisprudence. Melton v. Pace, 103 Tenn. 484, 53 S.W. 939. See Black on Judgments, § 536; Freeman on Judgments, § 156."

As to the facts, the court said in the Chandler case, page 51, 173 S.W. page 450: "These interests were not, indeed, brought before the court by naming Chandler as trustee; but were directly brought before the court by naming as parties those beneficially interested".

■ Thus, it seems clear that the law of the forum, Tennessee, is with the defendant in support of his defense that being sued in Florida only in his representative capacity as executor and trustee, the personal judgment rendered against him by the Florida Court is unenforcible in Tennessee. The Tennessee rule has support elsewhere: Troxell v. Delaware R. R., 227 U.S. 434, 33 S.Ct. 274, 57 L.Ed. 586; Van Cott v. Prentice, 104 N.Y. 45, 10 N. E. 257; Burton v. Williams, 63 Neb. 431, 88 N.W. 765.

■ Moreover, this court has concluded as a matter of law that the service of the show-cause order by direction of the Florida Court "upon any of the attorneys of record for Louis A. Montedonico, Sr.", did not constitute service upon Montedonico personally so as to support the judgment for $13,000.00 entered against him, for the recovery of which this action was brought. Without receiving personal notice of the rule nisi and the contempt proceeding against him, Montedonico could not lawfully be held in contempt or liable for a personal judgment. General retainers do not authorize

lawyers to accept service of process by which a court acquires jurisdiction over a party. Masterson v. LeClaire, 4 Minn. 163, 4 Gil. 108; State ex rel. Ponath v. Muench, 230 Mo. 236, 130 S.W. 282; McGarry v. New York County, 30 N.Y.Super. 464; Purcell v. Bennett, 68 N.J.L. 519, 53 A. 235.

The record establishes that Bussey, Mann & Barton, attorneys, appeared for Montedonico in the Florida Court exclusively in his representative capacity as executor and trustee, and did not hold themselves out as appearing for him individually. The Florida Court, when rendering judgment against him (Montedonico) personally, knew this. Its judgment is not enforcible here.

For the foregoing reasons, the bill of complaint in this cause is dismissed at the cost of plaintiff. An appropriate order will be entered.